SOUTHERN PAC. R. CO. v. BROWN et al.

SAME v. BRAY et al.

(Circuit Court, S. D. California. May 13, 1895.)

**PUBLIC LANDS—RAILROAD LAND GRANTS—RESERVATIONS—MEXICAN GRANTS.**
　In cases of Mexican grants by specific boundaries, lands claimed by the grantees to be within those boundaries are not public lands, within the operation of a railroad land grant, if, at the date of the latter, the question of the true location of the boundaries of the private grant is pending and undetermined.

Actions by the Southern Pacific Railroad Company against David R. Brown and others, and Nathaniel Bray and others, to determine the title to land.

Joseph D. Redding, for plaintiff.

Byron Waters, for defendants.

ROSS, Circuit Judge. There is but a single question in these cases, which have been submitted together and upon the same briefs, and that is whether the lands which have been patented to the defendants Brown and Bray, respectively, passed by or were excluded from the grant made by congress to the complainant company March 3, 1871 (16 Stat. p. 573). Confessedly, they are parts of odd sections, and are situated within the primary or 20-mile limits of that line of complainant's road, as located, built, and accepted, that the grant of March 3, 1871, was made to aid; and, if they were public lands at the time that grant took effect, they undoubtedly passed to the railroad company, and complainant is entitled to the relief sought. But, on the part of the respective defendants, it is claimed that they were not then public lands, because then included within the claimed limits of a Mexican grant called "Jurupa." The evidence shows that the grant of that rancho was made on September 28, 1839, by the then governor of California, to Juan Bandini, to whom juridical possession was given by the proper officer on December 5th following. The grant was one by specific boundaries, and the claim to it was presented to the board of land commissioners created by act of congress for the settlement of private land claims in California, and by that board confirmed October 17, 1854, and afterwards, on appeal, by the United States district court. That decree of confirmation became final by dismissal of the appeal from it, and a survey of the grant, under the instructions of the United States surveyor general for California, followed in June and July, 1869. It was made by Deputy United States Surveyor Reynolds, and included the lands here in controversy. It was made under and by virtue of the provisions of the act of congress of July 2, 1864 (13 Stat. 356), which directed the surveyor general, in surveying claims of the character mentioned, to follow as closely as practicable the decree of confirmation, where such decree designated the specific boundaries of the grant. Reynolds' survey was approved by the United States surveyor general for California, February 26, 1872, but on May 13, 1876, was rejected by the commissioner of the gen-

eral land office, whose action in that particular was approved by the secretary of the interior February 21, 1877, and a new survey of the grant ordered. That new survey was made in November, 1878, by William Minto, whose survey met with the approval of the department of the interior, and upon it a patent was issued by the government May 23, 1879. As surveyed by Minto and patented, the lands in controversy were excluded from the grant, but the evidence shows that, not only at the time the complainant's grant took effect, these lands were embraced by the survey of Reynolds, which then stood approved by the United States surveyor general for California, but that, for years before, they were claimed by those holding under the Mexican grant title to be within the boundaries of the rancho. Moreover, the evidence shows that another and adjoining tract of land, called El Rincon, was granted by the same governor to Bandini on the 28th day of April, 1839, which grant, having been confirmed by the United States board of land commissioners, was, on appeal to the United States district court, at its December term, 1856, confirmed, as an addition to the Rancho Jurupa, and in the decree of confirmation was described as bounded on the east by that rancho. It is true that, as finally surveyed and patented by the government of the United States, the two ranchos do not join, and that it was determined by the officers of the land department that there was some public land lying between them, part of which public land, after being surveyed, the defendants, Brown and Bray, respectively, were allowed to enter as pre-emptors. But this determination of the officers of the land department respecting the true boundaries of the Mexican grants, while conclusive upon those holding under them, did not become final until long after the grant to the complainant railroad company made by the United States took effect. At that time the lands here in controversy were not only claimed by the holders under the Mexican grant Jurupa to be within the boundaries of that rancho, but they were then included within those boundaries by a survey made under the sanction of the government of the United States, which survey had met the approval of its surveyor general for the state of California. They were not, therefore, "public lands," within the meaning of the grant to the complainant railroad company.

My views in respect to this point were fully expressed in the case of U. S. v. Southern Pac. R. Co., 45 Fed. 604–609, and subsequent reflection has but confirmed me in them. In brief, they are these: While the final result of the proceedings respecting the Jurupa grant was a conclusive determination that, as a matter of fact, none of the lands in controversy ever were within the true lines of that grant, they also show beyond doubt that they were claimed by the grant claimants to be within its boundaries, and that such claim was made and maintained at the time of the congressional grant to the Southern Pacific Railroad Company of March 3, 1871. That fact is determinative of the question as to whether the lands in controversy were embraced by the grant to the complainant. It is not the validity of such claim, but the fact that it was made, that excludes the lands embraced by it from the category of public lands,

within the meaning of the railroad land grants.    Doolan v. Carr, 125 U. S. 632, 8 Sup. Ct. 1228.

In the case of U. S. v. McLaughlin, 127 U. S. 428, 8 Sup. Ct. 1177, it was held that as in the case of a floating grant the Mexican government retained the right to locate the quantity granted in such part of the larger tract described as it saw fit, and as the government of the United States succeeded to the same right, the latter government might dispose of any specific tracts within the exterior limits of the grant, provided a sufficient quantity was left therein to satisfy the private grant; and, accordingly, that, in cases of floats, the railroad land grants might attach to lands within such exterior boundaries, provided a sufficient quantity of land was left therein to satisfy the private grant. But while thus modifying what was generally understood to have been the effect of the decision in Newhall v. Sanger, 92 U. S. 761, the court, in U. S. v. McLaughlin, proceeded to declare (127 U. S. 455, 8 Sup. Ct. 1177) that "the reasoning of the court in Newhall v. Sanger is entirely conclusive as to all definite grants which identified the land granted, such as the case before it then appeared to be," but went on to show that it was not fairly applicable to floats. I do not see how there can well be a decision more directly to the point that, in cases of Mexican grants by specific boundaries, lands which are claimed by the grantees to be within those boundaries are excluded from the category of public lands to which the railroad land grants apply, if, at the date of the latter, the question of the true location of the boundaries of the private grant is pending and undetermined. If in such a case the doctrine of Newhall v. Sanger, and the other cases approving it, does not apply, it does not apply to any case; for it does not apply to floats, as was pointed out in U. S. v. McLaughlin, and grants by specific boundaries and by name manifestly stand upon the same footing.

The records of the land department put in evidence in these cases clearly show that the contest over the survey of the Jurupa grant was in relation to the identity of the specific boundaries of the grant. If the contention of the holders under that grant that those boundaries included the lands here in controversy was well founded, undoubtedly the lands so included would not be public lands of the United States. It would seem plain enough, therefore, that, until that question was finally decided, it could not be known whether the lands so claimed were public lands or not. Under the laws of the United States, the duty of deciding that question devolved upon the officers of the land department. Its ultimate determination was vested in the secretary of the interior. Had he decided that the lines as represented by the Reynolds survey were the true boundaries of the grant, such decision would, of course, have been equally conclusive as the one that was made, and the patent following it would have been a conclusive determination that all the lands embraced within those lines were within the boundaries of the Mexican grant Jurupa, and therefore not public lands to which the railroad grant only could attach. It would seem plain, therefore, that, until the contested question of survey was decided, it could not be

known whether the lands involved in the contest were public or private lands; and, until such decision became final, lands so involved were sub judice, and not public lands, within the meaning of the railroad grant act, according to the rulings of the supreme court in the cases referred to, as I understand them.

It results from these views that there must be a decree for the defendants in each case, with costs; and it is so ordered.